[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Robert Marinko, hereinafter ("Robert") is the son of George Marinko ("George") who died leaving a large collections of his art work. Prior to George's death the defendant, Peter Hastings Falk, ("Falk") had befriended George, who had originally sought Falk's assistance to dispose of his art work. Falk had advised George that his asking price of $25,000 for his collection was too high. George's early surrealistic paintings were valued higher, but his present collection did not have the same interest. George and Falk set up an exhibition in which Falk was his agent at the Ely House in New Haven. Before the exhibition took place, George died on April 23, 1989. Falk remained in his agency role now with Robert as owner of the collection for the exhibition which took place in September as a memorial to George.
The agency relationship between Robert and Falk was never reduced to writing. By early 1992 none of George's work had been sold. Sometime in 1992 Robert, retained the right to make all the final decisions, agreed with Falk to place twenty-eight pieces with the Litchfield Auction Galleries ("Litchfield") for sale which took place on November 1, 1992 under the terms and conditions with Litchfield. (See Exhibit B). CT Page 10209
Robert testified Falk originally wanted 50% of any sale. Under the terms of their agreement for the sale at Litchfield, Falk and Robert entered into an agreement calling for 10% commission to the auction house, Falk's commission 30% and Robert's share 60%. The paintings are listed in Exhibit B plus 10 additional paintings, left from the Ely auction still at Falk's house. Robert had a report of proceeds of sale at Litchfield, in the amount of $13,925. The total value of the unsold and unreturned paintings from Litchfield amounted to $1650. Litchfield entered into bankruptcy and although Falk testified he knew of the bankruptcy he failed to claim the unsold paintings and did not inform Robert of the bankruptcy proceedings.
Plaintiff argues that the fiduciary responsibility of an agent is clear that he has a duty of good faith, loyalty and honesty to his principal. Robert further argues that Falk as his agent holds funds for the purpose of the agency and cannot apply them to any purpose not authorized by the terms of the trust. Robert argues that Falk was his agent, his obligation was to turn over the proceeds of the Litchfield auction and the unsold paintings of the auction.
Some time before the auction, Falk introduced Robert to a potential buyer Peter Blum ("Blum") to purchase the entire collection (sculpture and art) for $60,000. Blum saw the sculpture but part of the art work had already been delivered to Litchfield for auction. The second time Blum visited the home of Robert he was interested in the sculpture and obtained an option for "all the paintings and works on paper" for $30,000 for 60 days. Blum was not sure he wanted the art work until he saw what was at Litchfield. Blum knew that the second part of the agreement for the option gave him sixty days to exercise it. Blum testified he did not see any desirable works at Bethany, the home Robert, so what he would see at Litchfield would affect his decision.
Robert and Blum entered into this written agreement on October 30, 1992 (Exhibit D) calling for a sale price of $30,000 for the sculpture and the second portion of this agreement the option reciting also a sales price of $30,000. Falk received a commission, of $10,000 agreed to by Robert for the sale of the sculpture. Blum gave Robert $200.00 for the option which if exercised was to be applied to the purchase price. CT Page 10210
Blum testified he went to the auction and tried to stop the auction but was unsuccessful. Blum gave Falk a check for $10,000 to Peter Falk claiming he exercised his option. Robert testified Falk did not inform Robert of the exercise of the option until the night after the auction. Robert testified he was not aware or had forgotten the date the auction was taking place. Robert did not become aware of the auction until the next day when he received a telephone call from an unknown person seeking to purchase other paintings if available. Robert was never told the amount the auction produced until he received a letter from Falk dated November 12, 1992. Although the parties to the option knew that it depended upon what Blum saw at Litchfield, nothing was confirmed or conditioned in the agreement dated October 30, 1992 setting out the terms of the option, other than the time to exercise. Blum testified he had tried to stop the auction or get the proceeds. Under said circumstances, Blum bid on paintings which he said he felt he owned, because of his exercised option, to boost up the price. Robert never knew of the exercise of the option or the payment of $10,000 until after the auction. Falk never informed Robert what amounts the art sold for at the auction and only learned of the amount (Exhibit C) later on with a letter from Falk (Exhibit F) on December 12, 1992. The sum of $11,092 was sent to Falk from the Litchfield auction.
Falk takes the position that he earned his commission when Blum exercised his option. Falk further argues when Blum and Robert called off the deal as to the art work on November 17, 1992, (see Exhibit 2), that Robert's repudiation did not prevent him from earning his commission. Falk argues that under section 446 of the Second Restatement of Agency "An agent whose compensation is conditional upon his performance of specified services or his accomplishment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the service or achieves the result within such time, unless the principal, in bad faith, has prevented him from doing so.
In this case Blum and Robert mutually agreed to rescind the option agreement. Robert did not act in bad faith when he returned the $200 deposit and voided the $10,000 check payable to him dated 10/31/92 (exhibit E). The plaintiff argues further that the option agreement was unenforceable for vagueness and that there was no meeting of the minds. The option agreement exhibit D recited that the payment was in the amount of $30,000. No explanation was given to the court regarding the check (exhibit CT Page 10211 E) being only in the amount of $10,000. No explanation was given as to the application of the Falk's commission. Only by what transpired for the sale of the sculpture does Falk justify that he retained $10,000 out of the proceeds of the sale at Litchfield as his commission under the option which was never consummated.
The court finds that Robert would be required to litigate his right to the full option price, and Blum would have to obtain all the other artwork. As pointed out by the court the agreement is vague and not inclusive as to what was the bargain between Robert and Blum, and more likely than not unenforcible.
The court concludes from all the evidence that Falk was not entitled to his commission of $10,000 until all the art work as recited in the option was transferred to Blum which he never exercised and mutually voided. Such a casual option agreement cannot be enforceable nor did Falk earn a commission pursuant to the consummation of the option. The argument that his transaction may be likened to a real estate transaction when an agent produces a ready, willing and able buyer is unavailing in this case and is dissimilar. None of the terms of sale are set out or definite in the option agreement. As for the sale of the art work under the option no monies were received by Robert nor did Blum ever show an interest in enforcing the sale of the art work under the option. Accordingly the court finds that Falk did not earn his self created and unauthorized commission under the option and should not have appropriated the funds received from Litchfield in the manner he decided. Falk's position that he was entitled to the commission (see Exhibit F) is misplaced.
The defendant asserts that the statute of limitations bars recovery because as of January 27, 1993 that Falk's offset of his commission against the proceeds of the sale of the art in Litchfield started the running of the statute; and that pursuant to Conn. General Statutes § 52-581 the action for enforcement of an oral contract is three years. The complaint in this case is on the written contract (Exhibit B) seeking the proceeds and an accounting for the proceeds of the sale and return of the art work entrusted to Falk for the auction. Section 52-576 is the statute of limitations applicable to this case. This action was within time for enforcement under the applicable statute.
Robert entrusted Falk as his agent for the safe return of the art work brought to the auction. Blum's intervening acts did not relieve Falk from his fiduciary duties to safeguard the assets of CT Page 10212 his principal. Falk had a responsibility to notify Robert of the art work not sold and had no right to abandon it.
The court finds in favor of the plaintiff to recover the net proceeds of the, Litchfield auction of $11,092.50 less 30% of the gross sale of $13,925 as provided for in Exhibit B as the commission for Falk. Accordingly the amount due is $6,915.00, plus $1650 for the abandoned art work. Judgment may enter in the amount of $8565.00 in favor of the plaintiff.
Frank S. Meadow, Judge Trial Referee.